The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
*************
The Full Commission finds as facts and concludes as matters of law the following which were agreed upon by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and defendant-employer.
3. Aetna Casualty Surety Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage was $462.80, which yields a compensation rate of $308.53 per week.
5. Plaintiff is alleging an injury by accident on February 10, 1993, resulting in an alleged injury to his back.
6. From July 27, 1993 through January 9, 1994, plaintiff was paid short term disability benefits in the amount of $2,000.00.
7. The defendant-employer has denied liability and the issues to be determined by the Commission are : (1) Whether the plaintiff in fact suffered an injury by accident or a specific traumatic incident as alleged; (2) Whether there is a causal connection between plaintiff's present back condition and the alleged injury; (3) Whether proper notice was given to the employer; and (4) Whether defendants are entitled to a credit for short term disability, which plaintiff received.
**************
Based upon all the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff began working for defendant-employer in June 1983 and at the time of injury had been employed for approximately 10 years. Plaintiff was employed as a welder and maintenance worker.
2. On February 10, 1993, plaintiff injured his back while lifting a hood weighing approximately 150 pounds off a forklift and placing the hood on the floor. As plaintiff straightened up, he felt a sharp pain in his back and had trouble standing up. Plaintiff reported this injury to Joe LaCasse, his supervisor, immediately. Plaintiff also told a co-employee, Steve Ritchie, that he had injured his back immediately after the injury. Plaintiff had asked Steve Ritchie to help him with the lifting of the hood, but Mr. Ritchie was unavailable at the time plaintiff needed him.
3. Plaintiff reported his injury also to Vickie Higgins, but he did not immediately seek treatment through a doctor. Vickie Higgins is E.M.T. certified and provides first aid and emergency medical care for defendant-employer.
4. In the days and weeks following his February 10, 1993 injury, plaintiff's back felt like he had a pulled muscle. Thereafter, his back pain increased and his legs began to become numb and painful. Plaintiff continued to work. Plaintiff told his supervisor, Joe LaCasse, he needed to see a doctor. No appointment was arranged. Plaintiff subsequently talked to his former work supervisor who assisted him in getting medical treatment. Plaintiff first saw Dr. Susan Hunt at Occupational Health at Stanley Memorial Hospital on March 30, 1993.
5. Plaintiff has an extensive history of low back pain with radiation into his leg dating back to 1984. The stipulated medical records indicate that plaintiff received treatment from April, 1984 through July, 1984; from October 9, 1989 through December 16, 1991 and from March 2, 1992 through April 14, 1992. Conservative treatment was provided during these periods. There is no evidence that plaintiff received medical treatment for his back from April 15, 1992 through March 30, 1993, when he sought treatment for his February 10, 1993 work injury. The treatment plaintiff received for his back during the above periods were related by history to his work with defendant-employer.
6. On April 20, 1993, plaintiff was examined by Dr. Mokris at the Miller Orthopaedic Clinic in Charlotte, North Carolina. He described bilateral leg pain "over the last few months." His first mention of a "lifting and twisting injury" in the recorded notes of the doctors was in the notes of Dr. Chapman of the Miller Clinic on July 2, 1993. Plaintiff continued to work during this period, with the exception of those days missed due to back pain and when taken out of work by his doctor.
7. Dr. Chapman noted a bulge in the L4-5 central disc on the CT scan and mild degenerative disc disease at the L5-S1 level. He placed plaintiff on light duty. He ordered a discogram and CT scan that were conducted on July 14, 1993.
8. After prescribing physical therapy and lumbar epidural steroids in August, September and October of 1993, Dr. Chapman performed an endoscopic laser disc decompression on November 8, 1993 which improved plaintiff's overall pain syndrome. On January 4, 1994, Dr. Chapman determined that plaintiff had reached maximum medical improvement, assigned him a 10% permanent partial impairment rating to the back and restricted him to light duty with a 20 pound lifting restriction and no prolonged sitting, standing, repetitive twisting or bending. Plaintiff could not return to his previous job duties.
9. Plaintiff returned to work on January 10, 1994 and was able to work on a light duty job for several days for less than 8 hours a day. Plaintiff was unable to do the work assigned due to his level of pain. The light duty work offered to plaintiff was temporary and did not establish plaintiff's wage earning capacity.
10. Plaintiff worked a total of 19 hours and was paid at the rate of $5.25 per hour. Plaintiff worked 4 hours on January 10, 1994; 5 hours on January 11, 1994; 4 hours on January 12, 1994; 5 hours on January 13, 1994; and 1 hour on January 14, 1994.
11. On February 10, 1993 plaintiff sustained an injury to his back which arose out of and in the course of his employment and was the direct result of a specific traumatic incident of the work assigned. Plaintiff's injury significantly aggravated and accelerated his pre-existing degenerative disc condition and caused it to become symptomatic and disabling.
12. Although plaintiff sustained a work-related back injury in March, 1992 when he twisted to the left to catch a welding torch, plaintiff had not sought medical treatment for that injury since April 14, 1992 and there is no evidence that this injury caused any disability.
13. The November 8, 1993 surgery performed upon plaintiff by Dr. Chapman was causally related to his February 10, 1993 injury by accident or specific traumatic incident.
14. Although plaintiff had been released to light duty work by Dr. Chapman, plaintiff's supervisor took him out of work completely on January 14, 1994 and advised plaintiff that after speaking to his doctor, he had decided he did not want plaintiff working anymore.
15. On February 16, 1994, plaintiff reported to Dr. Chapman that he had done reasonably well until he lifted a bale of hay from the back of a truck at home several days before which caused additional pain. Plaintiff had previously been advised by Dr. Chapman to test his back and that he should not walk around in fear that he might do something that would cause him to become paralyzed. Any increase in symptoms caused by the hay lifting incident were temporary and were the direct and natural consequence of plaintiff's February 10, 1993 injury. Plaintiff had improved by his February 23, 1994 examination but his condition had worsened by March 15, 1994. A CT scan showed that his right L4-5 disc had enlarged and was causing an increase in pain.
16. As a result of his February 10, 1993 work injury, plaintiff has been incapable of earning wages in any employment during the following periods: March 31, 1993 through April 2, 1993; April 26, 1993 through May 7, 1993; July 20, 1993 through January 9, 1994 and from January 15, 1994 through the date of hearing and continuing. Plaintiff was temporarily partially disabled from January 10, 1994 through January 14, 1994.
17. Plaintiff received $1,357.00 in unemployment benefits from January 10, 1994 through February 27, 1994. Plaintiff received disability benefits from July 27, 1993 through January 9, 1994 from a short term disability plan; however, there is no evidence of what, if any, portion of these benefits were employer financed.
18. The parties stipulated that defendant voluntarily paid workers' compensation benefits for ten days without the benefit of an agreement during the periods plaintiff missed work beginning March 31, 1993 and ending May 7, 1993.
***************
Based upon the foregoing stipulations, and findings of fact, the Full Commission enters the following
CONCLUSIONS OF LAW
1. On February 10, 1993 plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer when he injured his back while lifting and moving a hood weighing approximately 150 pounds from a forklift. N.C. Gen. Stat. § 97-2 (6).
2. As a result of his February 10, 1993 injury, plaintiff was temporarily totally disabled for the following periods: March 31, 1993 through April 2, 1993; April 26, 1993 through May 7, 1993; July 20, 1993 through January 9, 1994 and from January 15, 1994 through the date of hearing and continuing. Plaintiff is entitled to payment by defendants of temporary total disability compensation benefits at the rate of $308.53 per week for all periods of his temporary total disability. N.C. Gen. Stat. § 97-29.
3. As a result of his February 10, 1993 injury, plaintiff was temporarily partially disabled from January 10, 1994 through January 14, 1994. Plaintiff is entitled to temporary partial disability compensation benefits at the rate of sixty-six and two-thirds percent (66 2/3%) of the difference between his average weekly wage before the injury and the average weekly wage he was able to earn thereafter during the period he was temporarily partially disabled. N.C. Gen. Stat. § 97-30.
4. Defendants are entitled to a credit for the ten days of workers' compensation benefits from March 31, 1993 through May 7, 1993, and for the $1,357.00 in unemployment compensation benefits paid to plaintiff. Defendants are not due a credit for the disability benefits that plaintiff received through a short term disability plan as they have not proven that these benefits, or any part of them, were financed by the employer. N.C. Gen. Stat. § 97-42; Foster v. Western-Electric Co., 320 N.C. 113, 117-118
(1987).
5. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury of February 10, 1993. N.C. Gen. Stat. § 97-25.
6. Defendant-employer received timely notice of plaintiff's injury of February 10, 1993 when plaintiff verbally informed his supervisor, Joe LaCasse, that he had hurt his back immediately after the incident. N.C. Gen. Stat. § 97-22.
**************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
Defendants shall pay to plaintiff temporary partial disability compensation at the rate of $242.05 per week for the period from January 11, 1994 through January 14, 1994. In that this compensation has accrued, it shall be paid to plaintiff in a lump sum, uncommuted, subject to the attorney's fee approved below, and subject to the credit due defendants.
Defendants shall pay to plaintiff temporary total disability compensation at the rate of $308.53 per week during the following periods: March 31, 1993 through April 2, 1993; April 26, 1993 through May 7, 1993; July 20, 1993 through January 9, 1994 and from January 15, 1994 through the date of hearing and continuing until further Order of the Industrial Commission. That compensation which has accrued shall be paid to plaintiff in a lump sum, uncommuted, subject to the attorney's fee approved below, and subject to the credit due defendants.
Defendants are entitled to $1,357.00 as a credit for the unemployment compensation benefits paid to plaintiff, and a credit of $440.77 for the ten days of workers' compensation benefits paid to plaintiff during the period from March 31, 1993 through May 7, 1993.
Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as the result of his compensable injury of February 10, 1993 when bills for the same have been submitted and approved through procedures adopted by the Commission.
A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel and thereafter, plaintiff's counsel shall receive every fourth check. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to his counsel.
Defendants shall pay the costs due this Commission.
 S/ ____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ____________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ____________________________ J. RANDOLPH WARD COMMISSIONER